The act provides for the sale of all lands owned by the state or by any of the levee boards at public auction, after due advertisement.

There had been a prior contract made, and under it the purchaser had acquired a right, to which the board gave its recognition by its own act.

The new method of disposing of the public lands of the State, under said Act No. 215, did not divest the right acquired under the option.

A similar question was decided by the Supreme Court of the United States. Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363.

The land commissioners, in the cited case above, had enforced a similar contract, which the parties attacked on grounds similar to those here.

The court accepted the construction placed upon the act by the land commissioners.

The cited act above, No. 215 of 1908, has application to future sales, and to lands not subject to contract as this was. It was a subsisting valid contract.

The other questions raised by defendant are covered by our decision. There is no necessity of deciding every proposition submitted, as they are met by the conclusion at which we have arrived.

The law and the evidence being in favor of plaintiffs, the judgment appealed from is affirmed.

━━━━━━

(52 South. 676.)

No. 18,053.

HELMAS et ux. v. PAILET.

HEALY v. SAME.

(Feb. 14, 1910.  On the Merits, June 6, 1910.)

*(Syllabus by the Court.)*

1. TIME (§ 10*)—SUSPENSIVE APPEAL—TIME OF TAKING—EXCLUDING SUNDAYS.

   A suspensive appeal must be taken within 10 days, excluding Sundays, and as the appeal in this case was within that period it was timely, and the motion to dismiss must be overruled.

   [Ed. Note.—For other cases, see Time, Cent. Dig. § 48;  Dec. Dig. § 10.*]

2. LANDLORD AND TENANT (§ 132*)—REPAIR OF PREMISES—RIGHTS OF TENANT.

   Plaintiffs seek to recover damages for inconvenience and loss, resulting, as they allege, from the unauthorized invasion, for the purpose of making alterations and repairs, of premises occupied by them as tenants.

   *Held,* that they were subjected to some inconvenience, but to no loss ; that the inconvenience resulted from a misapprehension for which they were as much to blame as defendant;  and that the jury and the judge a quo did substantial justice in rejecting their demands.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 468;  Dec. Dig. § 132.*]

Appeal from Civil District Court, Parish of Orleans;  E. K. Skinner, Judge.

Actions by Gustave Helmas and wife against Elias Pailet, and by Elizabeth Healy against Elias Pailet. The actions were consolidated;  verdicts for defendant, and plaintiffs appeal. Affirmed.

Ryan, Gautreaux & Sbisa, for appellants. A. D. Danziger, for appellee.

On Motion to Dismiss the Appeal.

BREAUX, C. J.  Plaintiffs brought this suit for trespass and they claimed damages in the sum of $5,000.

The case was tried by jury, and verdict was found in favor of defendant.

On this verdict, judgment was rendered on the 15th day of December, 1909, and signed on the 17th of the same month.

The plaintiffs applied for an appeal.

The order granting them an appeal, suspensive and devolutive, was signed on the 22d day of December, 1909.

The appeal was made returnable on the 10th day of January, 1910.

On that day, the transcript was filed.

The defendant and appellee moves to dismiss the appeal on the ground alleged: That as the judgment was rendered in favor of defendant and signed on the respective dates before mentioned, and as the bond of appeal

was not filed until December 29, 1909, the appeal should be dismissed.

Considering the motion to dismiss the suspensive appeal.

Suspensive appeals may be taken within 10 days after the judgment has been signed, excluding Sundays. Code Prac. art. 575.

Deducting December 19th and 26th (Sundays) two days, the time for a suspensive appeal had not elapsed.

If the appeal were dismissed because not timely taken for a suspensive appeal, the success of the mover would amount really to nothing.

Beyond question the plaintiffs were within time to take a devolutive appeal.

The bond was furnished in the amount required by the judge a quo.

The appeal is good as devolutive if filed after the 10 days. Reed v. His Creditors, 37 La. Ann. 907; Successions of Keller, 39 La. Ann. 579, 2 South. 553; Chaffe v. Carroll, 34 La. Ann. 122; Dwight v. Barrow, 25 La. Ann. 424.

The appeal was timely taken for a suspensive appeal.

Motion to dismiss the appeal is therefore overruled.

### On the Merits.

MONROE, J. Plaintiffs prosecute this appeal from a verdict and judgment rejecting their claims, against defendant, for damages.

The case presented by the transcript is as follows:

About the middle of May, 1908, defendant bought, or agreed to buy, a double cottage house, one side of which was occupied by plaintiff, Helmas, with his family, as a tenant, by the month, at $8, and the other side by the plaintiff, Mrs. Healy, with her family, also as a tenant, by the month, at $7. The price of the property was $3,400, and, as plaintiff was buying as an investment he was desirous of putting the premises in better condition in order to get a better return. The cottage, as originally constructed, stood back from the street, with a gallery in front, and was three rooms deep on each side, after which there was an open space, and, then, a two-story back building, with a cistern, on each side, in the space mentioned, a fence dividing the two back yards, and a narrow alley leading from the front along either side of the main building into the respective yards. At some later period, there had been built a room, extending across the front of the house, from the gallery to the property line, with a shed over the banquette, and the front gallery had been inclosed and partitioned, making a little room for each tenement, the other room mentioned not being included in the lease of said tenements, but being called an "office," and (recently) leased to another party, some of whose effects were still there.

On Sunday, May 17th, defendant visited the premises, accompanied by his architect and his contractor, and they testify to a conversation between defendant and plaintiffs, in which the daughter and wife of Helmas and defendant's companions are said to have taken part, and the substance of which was that defendant wanted to make some general repairs, which were likely to subject the tenants to inconvenience, and was willing, if they would consent, that they should occupy the premises, rent free, while the work was going on; to which, according to the witnesses mentioned, the tenants yielded a willing consent. Plaintiffs deny that there was any such conversation, and yet, here and there, we find admissions, inconsistent with such denial, and we conclude that defendant notified plaintiffs that he wished to make repairs, and understood that they were willing that he should exercise his pleasure in the matter, though they, probably, did not anticipate that he intended to make the al-

terations which he had in view and which, on Thursday, May 21st, were begun. On that day, Helmas, who was a cooper, had gone to his work, and Mrs. Healy, who is a colored nurse, had also gone out, when Bichow, a carpenter employed by defendant's contractor, appeared on the scene, and informed Mrs. Helmas that he had come to work, and that the plan of operations included the demolition of the office and the conversion of part of the space occupied by it, together with that occupied by the gallery rooms, into two rooms (one for each tenement), with a gallery in 'front. He says, in his testimony, that Mrs. Helmas made no objection, but that she and her daughter did what they could to facilitate him, Mrs. Helmas, herself, with his assistance, moving out of her front gallery room (which she used as a reception, or sitting, room) some little furniture, and the daughter going off to find the key of the office, which was thought to be in the possession of the former tenant. Mrs. Helmas, on the other hand, says. that she was surprised and shocked, and that she objected that the work ought not to be begun in the absence of her husband, but she admits, though with the greatest reluctance, that she did move or assist in moving her furniture. During that day (Thursday) the work of demolition of the office, and, in part, of the gallery rooms, progressed considerably, and, in the evening, when the plaintiffs returned, they found the disorder which necessarily resulted. Helmas says that he made an effort to see his attorneys, but was unsuccessful, and so the work went on, during the next day, Friday (when the cisterns were moved to positions in the rear of the back building) and Saturday and Monday, upon which last mentioned day (in the evening, as we understand) defendant received a note from plaintiff's (Helmas') counsel, advising him that plaintiff (Helmas) objected to the work, and warning him that "any further encroachment on his rights" would be resisted in a lawful manner. On Tuesday morning, therefore, defendant stopped the work, with the exception, perhaps, of the laying of some brick footings on the space which had been occupied by the office and which was not under lease to the plaintiffs, and he says that he would not have begun it if he had not supposed that the tenants had consented. Bichow, also, testifies that he would not have begun or continued the work if there had been any objection, and, plaintiff, Helmas admits that he never spoke to any of the workmen or intimated to them that what they were doing was objectionable to him, nor did the other plaintiff, Mrs. Healy. The Helmas family, it may be remarked, left the premises on June 4th, and Mrs. Healy, a few days later, having received notices to vacate. Some 19 witnesses were examined, and we have considered their testimony carefully. Plaintiffs were, no doubt, subjected to some inconvenience, but to no loss, and the inconvenience resulted from a misapprehension for which they were as much to blame as defendant.

We are, therefore, of opinion that the jury and the judge a quo did substantial justice in rejecting their demands. The verdict and judgment appealed from are, accordingly, affirmed.